[No. A110408. First Dist., Div. Five. Nov. 7, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL JIOVANNI DALERIO, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, parts II. and III. of this opinion are not certified for publication.

## Counsel

Robert Derham, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, René A. Chacón and Nanette Winaker, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**SIMONS, J.**—The crime of kidnapping requires the unlawful movement of the victim by force or fear. California courts have wrestled with the degree of force necessary to establish the kidnapping of an unresisting infant or young child, and our Supreme Court has concluded that the requisite force "is simply the amount of physical force required to take and carry the child away a substantial distance for an illegal purpose or with an illegal intent." (*In re Michele D.* (2002) 29 Cal.4th 600, 610 [128 Cal.Rptr.2d 92, 59 P.3d 164].) The Legislature then codified this holding in Penal Code section 207, subdivision (e) (hereafter section 207(e)). Defendant, Michael Jiovanni Dalerio, deceived a nine-year-old child into voluntarily accompanying him and then physically escorted the child a substantial distance before attempting to kill her. In the published portion of our opinion, we conclude that this conduct constitutes a kidnapping under section 207(e).

### FACTUAL BACKGROUND

The nine-year-old victim testified that on the morning of July 9, 2004, she saw defendant outside the home of her neighbors, minors Desiree and Dillon. When she asked defendant, whom she knew, if Desiree and Dillon were

home, he told her they were in the park looking at a deer. When the victim walked to the park she saw defendant at the park gate, riding his bicycle. He rode his bicycle alongside her and the two talked as they continued into the park around the softball field and up onto a fire road. Defendant told her that Desiree and Dillon were with their mother looking at a deer he had sheltered. Once on the fire road, they passed a bridge and defendant told her to turn into the woods. When they reached the wooded area, he set his bicycle against a rock and led the way up a trail to a place he claimed her neighbors were located.

After walking a short distance, they stopped. For five to 10 minutes while the victim followed him, defendant appeared to be looking for her neighbors. Defendant then placed one hand on the back of the victim's neck and the other over her mouth and said, "Don't scream or I'll break your neck." The victim lay down on the ground and defendant started choking her. Before she lost consciousness, the victim urinated on herself. When she regained consciousness, she was holding a wet sock in her hand and was unable to locate one of her shoes. She put the sock back on her foot and walked down the trail toward her house.

Craig L. testified he saw the victim walking with her head down, leaves in her hair, a dirty shirt and one shoe missing. When Craig L. asked if she had fallen off her bicycle, she mumbled that her bike had broken the previous week. She then moved her hair back from her face and he noticed a gash over her eye. He asked her whether she was alone and whether she had been there all night. To these questions she answered in a monotone, "I don't know. I just woke up."[1]

Craig L. took the victim to the Brooktrails Fire Department. The fire chief noted she was extremely confused and had blood on her face and a considerable amount of bruising. He contacted the sheriff's department and two deputies responded and met with the victim. Although she continued to appear disoriented, she was able to tell them her name, date of birth and address.

The victim was eventually transported to Howard Hospital where she was examined. As a result of the attack, she suffered abrasions of her face, burst capillaries in her eye, swelling of her lip and around her eye, and abrasions with small burst blood vessels along the back of her neck consistent with strangulation.

On October 7, 2004, the victim and several law enforcement officials took 15 to 20 minutes to walk the path taken by the victim during the crime.

---

[1] The victim testified that she did not tell Craig L. what happened because she did not feel safe.

*Defendant's Interview with Police*

On the day of the incident, the victim reviewed a photographic lineup and identified defendant as her assailant. When Detectives Alvarado and Bailey interviewed defendant after his arrest, he told them he slapped and punched the victim a couple of times because she "was real mean" to his son and disrespected him by telling him to "fuck off and shit." When the victim started screaming, he took her "up into the woods . . . and then slamm[ed] her down," took one shoe and sock off her and put the sock in her mouth to quiet her. Although defendant claimed he did not remember what happened next, he ultimately said he "apparently . . . choked" the victim. Before leaving the area, he threw branches and leaves on top of her. He believed he may have killed the victim.

The jury convicted defendant of attempted murder with deliberation and premeditation (Pen. Code, §§ 664, 187, 189)[2] (count one) and kidnapping (§§ 207, subd. (a), 208, subd. (b)) (count two) and found true a special allegation that defendant inflicted great bodily injury during the commission of the kidnapping (§ 12022.7, subd. (a)).[3] On the attempted murder conviction, the court sentenced defendant to a prison term of life with the possibility of parole and imposed a consecutive term of 14 years for the kidnapping.[4] On appeal, defendant argues (1) the court erred in denying his motion under section 1118.1 for judgment of acquittal on the kidnapping charge; (2) imposing separate punishments for the kidnapping and attempted murder convictions violates section 654; and (3) there was insufficient evidence to support a finding that the attempted murder was committed with premeditation and deliberation. We reject each contention and affirm.

DISCUSSION

I. *The Trial Court Properly Denied Defendant's Section 1118.1 Motion*

At the close of the prosecution's case, defendant moved under section 1118.1 for an entry of judgment of acquittal on the kidnapping and attempted murder charges. The court denied defendant's motion as to both offenses; defendant appeals the court's ruling as to the kidnapping charge only.

Section 1118.1 provides in relevant part: "In a case tried before a jury, the court on motion of the defendant . . . , at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the

---

[2] All undesignated section references are to the Penal Code.

[3] The jury also found that the victim was under the age of 14.

[4] The court also imposed a two-year concurrent term for defendant's violation of probation.

entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal."[5] In ruling on a motion for acquittal under this provision, the trial court must consider whether from the evidence presented, including all reasonable inferences to be drawn therefrom, there is any substantial evidence to support a finding of each element of the offense charged. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 89 [17 Cal.Rptr.3d 710, 96 P.3d 30].)

We employ the same test on appeal: We review the whole record in the light most favorable to the judgment below to determine whether there is evidence which is reasonable, credible and of solid value, such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. This inquiry does not require the reviewing court to ask itself whether *it* believes the evidence established guilt beyond a reasonable doubt but whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Cuevas* (1995) 12 Cal.4th 252, 260–261 [48 Cal.Rptr.2d 135, 906 P.2d 1290] [application of sufficiency of evidence test in reviewing trial court's ruling on a section 1118.1 motion].)

In our review, we apply the corpus delicti rule.

■ " ' " 'The corpus delicti of a crime consists of two elements[:] the fact of the injury or loss or harm, and the existence of a criminal agency as its cause.' " ' [Citation.] 'In any criminal prosecution, the corpus delicti must be established by the prosecution independently from the extrajudicial statements, confessions or admissions of the defendant.' [Citations.] Such independent proof may consist of circumstantial evidence [citations], and need not establish the crime beyond a reasonable doubt [citations].

"The purpose of the corpus delicti rule is to assure that 'the accused is not admitting to a crime that never occurred.' [Citation.] The amount of independent proof of a crime required for this purpose is quite small; we have described this quantum of evidence as 'slight' [citation] or 'minimal' [citation]. The People need make only a prima facie showing ' "permitting the reasonable inference that a crime was committed." ' [Citation.] The inference

---

[5] Section 1118.1 reads in full as follows: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal. If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right."

need not be 'the only, or even the most compelling, one . . . [but need only be] a *reasonable* one . . . .' [Citation.]" (*People v. Jones* (1998) 17 Cal.4th 279, 301–302 [70 Cal.Rptr.2d 793, 949 P.2d 890].)

Defendant argues there was no proof, independent of his statement, that a kidnapping occurred because, according to the victim, she accompanied him into the wooded area of the park voluntarily. Therefore, he contends, the trial court should have granted his section 1118.1 motion. We conclude the victim's testimony was sufficient to justify denial of the motion.

■ "Generally, to prove the crime of kidnapping, the prosecution must prove three elements: (1) a person was unlawfully moved by the use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the person was for a substantial distance. (§ 207, subd. (a).)"[6] (*People v. Jones* (2003) 108 Cal.App.4th 455, 462 [133 Cal.Rptr.2d 358], fn. omitted.)

■ In *In re Michele D.*, the defendant, who was 15 years old, accompanied a woman and her 12-month-old daughter, Cameron, to a market. The defendant and the mother alternated pushing the baby in her stroller. At some point the defendant and the mother headed to different areas of the store, with defendant pushing Cameron in the stroller. When the defendant did not return, the police were called and found the defendant and Cameron approximately a mile and a half away. The defendant was accused of kidnapping. (*In re Michele D., supra*, 29 Cal.4th at pp. 603–604.) The Supreme Court recognized that the defendant's conduct did not satisfy the literal requirements of the kidnapping statute in that "force," as that term is conventionally understood, was not used to effect the illegal movement. Nevertheless, the court held, "[I]t is settled that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences that the Legislature did not intend. . . . [Citation.] The fact that the Legislature may not have considered every factual permutation of kidnapping, including the carrying off of an unresisting infant, does not mean the Legislature did not intend for the statute to reach that conduct." (*Id.* at p. 606.) Recognizing that no prior California case had established the "quantum of force necessary to establish the force element of kidnapping in the case of an infant or small child," the court set that standard as follows: "[T]he amount of force required to kidnap an unresisting infant or child is simply the amount of physical force required to take and carry the child away a substantial distance for an illegal purpose or with an illegal intent." (*Id.* at p. 610.) This rule is now codified in section 207(e).

---

[6] Section 207, subdivision (a) defines kidnapping in relevant part as follows: "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping."

Defendant presents two arguments for distinguishing the facts of our case from the acts criminalized in section 207(e). First, he argues section 207(e) pertains only to *"infants and small children,"* and not to the nine-year-old victim in this case. Second, he contends that *In re Michele D.* "retained an element of force," "a physical taking," which is absent here.

*Parnell v. Superior Court* (1981) 119 Cal.App.3d 392 [173 Cal.Rptr. 906] (*Parnell*), cited with approval in *In re Michele D., supra,* 29 Cal.4th at page 609, is instructive on each contention. In *Parnell,* the defendant and an accomplice persuaded a seven-year-old boy to enter the defendant's car on the pretext they would give him a ride home. Once inside the car, the boy sat between the two men. After the child stated that they had passed his home, the men told him they would call his parents and ask if he might spend the night. After arriving at a rented cabin 20 miles away, and staying there for several nights, the defendant told the boy he had appeared in court and obtained custody of him. (*Id.* at p. 398.) Though no force or fear was utilized to accomplish this abduction, the kidnapping conviction was affirmed. The court stated the kidnapping of a minor could be accomplished "even if unaccompanied by force so long as it was done for an improper purpose, because a minor 'is too young to give his legal consent to being taken.' " (*Id.* at pp. 402–403, fn. 3, quoting *People v. Oliver* (1961) 55 Cal.2d 761, 764–765 [12 Cal.Rptr. 865, 361 P.2d 593].) "[The victim] was not informed of [the defendant's] intent to permanently take him from his home and, even if he knew, it is questionable whether he could have appreciated the significance of a permanent severance from his home and family. [His] near passive conduct should not be construed as consent; rather, it more logically evidences the inability of a minor to give a knowing consent." (*Parnell,* at p. 403, fn. 3.)

The same reasoning applies here. A nine year old certainly qualifies as a "young child,"[7] and, due to defendant's deception, the victim was no more able to appreciate her peril than the *Parnell* victim. Moreover, once the victim encountered defendant at the park entrance, he directed her to a wooded area, physically escorting her to this remote location, where he tried to murder her. This is not a situation where an adult engages in a deception to persuade a child to meet him later in a secluded spot and commits a crime when the victim appears. Section 207, subdivision (b) proscribes the movement of a child under the age of 14 procured by deception alone, but only

---

[7] Section 207(e) is expressly limited to situations where the victim of the alleged kidnapping is an "unresisting infant or child." The language comes directly from *In re Michele D.*, but one can plausibly argue that *In re Michele D.* only intended the rule to apply to infants and young children, because it articulated the rule in response to the need for a standard setting the level of force necessary to establish a kidnapping of an "infant or small child." (*In re Michele D., supra,* 29 Cal.4th at p. 610.) We need not resolve this argument or decide if section 207(e) applies to all minors; even if the statute should be more limited, a child whose age is expressed in a single digit is a young child for purposes of this provision.

when that deception is for the purpose of committing any act defined in section 288.[8] Section 207(e) requires a taking and that component is satisfied where, as here, the defendant relies on deception to obtain a child's consent to walk with him and then, through verbal directions and his *constant physical presence*, takes the child a substantial distance for an illegal purpose.

*People v. Oliver, supra,* 55 Cal.2d 761, relied on in both *Parnell* and *In re Michele D.* supports this conclusion. In *Oliver*, the defendant was charged with kidnapping a two-year-old infant and thereafter committing a lewd and lascivious act with the child. The only evidence of "force" was testimony that the defendant was observed walking down an alley, leading the victim by the hand. (*Oliver*, at pp. 763–764.) In fact, the Supreme Court stated that the victim went "willingly" with the defendant. (*Id.* at p. 764.) The court held that where a defendant is charged with kidnapping a child "too young to give . . . legal consent to being taken," it is both necessary and sufficient to show that the child was taken "for an illegal purpose or with an illegal intent." (*Id.* at pp. 764, 768.)

Defendant argues, unpersuasively, that *Oliver* and *Parnell* should be distinguished because each involved a physical taking: In *Oliver*, the accused held the child's hand and, in *Parnell*, a vehicle was utilized to transport the child. But, since the children in *Oliver*, *Parnell* and here did not resist, the use of the car in *Parnell* and the handholding in *Oliver* are simply immaterial.

Thus, under section 207(e), evidence that a defendant deceives a young child into walking with him a substantial distance away from public view, leaving her particularly vulnerable to his attack, is sufficient to satisfy the corpus delicti rule in a kidnapping case. The evidence submitted by the prosecution in its case-in-chief justified denial of defendant's motion for judgment of acquittal without consideration of his statement.

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[8] Section 207, subdivision (b) provides: "Every person, who for the purpose of committing any act defined in Section 288, hires, persuades, entices, decoys, or seduces by false promises, misrepresentations, or the like, any child under the age of 14 years to go out of this country, state, or county, or into another part of the same county, is guilty of kidnapping."

In addition, section 207, subdivision (c) provides: "Every person who forcibly, or by any other means of instilling fear, takes or holds, detains, or arrests any person, with a design to take the person out of this state, without having established a claim, according to the laws of the United States, or of this state, or who hires, persuades, entices, decoys, or seduces by false promises, misrepresentations, or the like, any person to go out of this state, or to be taken or removed therefrom, for the purpose and with the intent to sell that person into slavery or involuntary servitude, or otherwise to employ that person for his or her own use, or to the use of another, without the free will and consent of that persuaded person, is guilty of kidnapping."

*See footnote, *ante*, page 775.

DISPOSITION

The judgment is affirmed.

Jones, P. J., and Gemello, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 14, 2007, S148557.